UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ROBERT COOPERSMITH and ALLEN ECKERT, Individually and on Behalf of all Others Similarly Situated,

Plaintiffs,

vs.

LEHMAN BROTHERS INC.,

Defendant.

C.A. No. 03-12205-RCL

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF PLAINTIFF ROBERT COOPERSMITH FOR APPOINTMENT AS LEAD PLAINTIFF, AND/OR FOR CERTIFICATION AS A CLASS REPRESENTATIVE PURSUANT TO RULE 23, AND FOR APPROVAL OF HIS SELECTION OF LEAD COUNSEL

Plaintiff Robert Coopersmith ("Movant") respectfully submits this memorandum of law in support of his motion for (i) appointment as lead plaintiff, pursuant to Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4; (ii) and/or, in the alternative, certification of this action as a class action and Movant as a class representative pursuant to Rule 23(a) and (b)(3); and (iii) approval of the Movant's selection of Lead Counsel.

### INTRODUCTION

On May 14, 2003, Terry Swack filed a class action lawsuit against Lehman Brothers, Inc. ("Lehman"), on behalf of purchasers of the common stock of Razorfish, Inc. ("Razorfish") during the period from May 24, 1999 through February 9, 2001 (the "Class Period"). C.A. No. 03-10907-RCL. The plaintiff alleged that defendant violated Section

10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder by issuing fraudulent analyst reports that artificially inflated the price of Razorfish stock during the Class Period. A notice of the suit, as required by the PSLRA, was published on May 14, 2003. Declaration of Thomas G. Shapiro ("Shapiro Decl."), Exhibit A.

Plaintiff Swack filed a motion for appointment as lead plaintiff pursuant to the provisions of the PSLRA, 15 U.S.C. § 78u-4. Defendant opposed that motion on the alleged ground that she did not "purchase" her shares of Razorfish, Inc. during the Class Period because she did not purchase any shares on the open market, but instead acquired shares when she sold a company to Razorfish in a private transaction. On August 13, 2003, the Court denied Swack's motion on the grounds that : "for reasons set out in the response of the defendant to this motion, it does not appear that Ms. Swack is the most appropriate party to serve as lead plaintiff."

On November 10, 2003, the instant action was filed on behalf of plaintiffs Robert Coopersmith and Allen Eckert, alleging the same claims against Lehman as the Swack complaint. Coopersmith purchased 800 shares of Razorfish, Inc. common stock during the Class Period for total consideration of approximately $25,000. See Coopersmith certification, attached to the complaint. There are no competing applications to be appointed lead plaintiff or to be certified as a class representative.[1]

---

[1] Plaintif Eckert is ready and willing to serve as a lead plaintiff and class representative in the event his services are needed. He is not seeking to be designated at this time in view of the larger losses suffered by Coopersmith.

2

## STATEMENT OF FACTS

This case alleges that defendant Lehman, a leading investment banking and brokerage firm, issued fraudulent analyst reports concerning Razorfish, which artificially inflated the price of Razorfish common stock during the Class Period. Razorfish was at all relevant times a publicly traded company that provided internet related services to businesses. Lehman was the co-manager of an initial public offering ("IPO") of stock for Razorfish on April 27, 1999.

This case arises from investigations by state and federal securities regulators into conflicts of interest arising from the dual role of securities analysts in providing investment advice while at the same time working with or under the control of investment bankers to use research coverage as a tool to secure or retain lucrative investment banking business. On April 28, 2003, the Securities and Exchange Commission ("SEC") filed a complaint against Lehman in the United States District Court for the Southern District of New York which alleged, among other things, that Lehman violated rules of the National Association of Securities Dealers ("NASD") and the New York Stock Exchange ("NYSE") by issuing analyst reports on Razorfish that were not issued in good faith, that contained exaggerated or unwarranted claims, and/or contained opinions for which there was no reasonable basis. According to the SEC complaint, on May 3, 1999, the Lehman analyst covering Razorfish "confided to an institutional investor in e-mails that he was not sure of the rating and price to assign to [Razorfish] when he initiated coverage." The institutional investor replied to the analyst that he would rate Razorfish neutral with a price target of $20. As alleged by the SEC, the Lehman analyst responded:

> "Well, they are a banking client, so I expect a 2 rating with a price target just a shade above the trading price."

3

A "2" rating, as explained in the SEC complaint, was a rating of "Outperform (expected to outperform the market by 5-15 percentage points)." The analyst explained this rating and price target in an e-mail to the institutional investor which stated as follows:

> "well ratings and price targets are fairly meaningless anyway, buy-side generally ignores, commentary is what matters and I'll be a 3-Neutral in my comments . . . but, yes, **the 'little guy' who isn't smart about the nuances may get misled, such is the nature of my business."** (Emphasis added)

In short, the analyst was acknowledging that the "little guy", or retail investor, might be misled by his report on Razorfish.

The SEC complaint also alleges that Lehman used its research coverage to obtain investment banking business. According to the SEC complaint:

> Lehman used the promise of future research coverage to obtain Investment Banking business. Implicit in Lehman's marketing efforts was the assurance that Lehman's research would be favorable and **that Lehman's research would raise the price of the issuer's stock.**" (Emphasis added)

With respect to the Razorfish reports, the SEC alleged that the May 24, 1999 report cited above was an example that demonstrated that

> "These conflicts of interest caused analysts, at times, to issue more positive research reports or ratings, and to avoid downgrades or negative reports regarding companies that were Investment Banking clients."

In addition, the SEC complaint alleges that the Lehman analysts who authored the reports on Razorfish during the Class Period curried favor with Razorfish by regularly e-mailing information to Razorfish executives. For example, on May 16, 2000 the Lehman analysts e-mailed to Razorfish executives a new spreadsheet they had prepared of key operating metrics for the first quarter of 2000 and the fourth quarter of 1999 on companies in the ebusiness services sector. The analysts also sent Razorfish executives copies of

4

research reports prepared by Lehman on competitors of Razorfish and reports on the IT professional services sector.

Lehman ultimately consented to entry of judgment on the SEC complaint against it, without admitting or denying guilt. A judgment was entered against Lehman that, *inter alia*, enjoined Lehman from violating certain rules of the NASD and the New York Stock Exchange and ordered Lehman to pay $80 million.

## **ARGUMENT**

### I.  MOVANT MEETS THE REQUIREMENTS FOR APPOINTMENT AS LEAD PLAINTIFF, AND SHOULD BE APPOINTED LEAD PLAINTIFF IN THE ABSENCE OF ANY COMPETING APPLICATIONS

#### A.  Movant Should Be Appointed Lead Plaintiff in the Absence of Any Competing Applications

The PSLRA provides that in each class action brought pursuant to the Securities Exchange Act of 1934, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Where, as here, Movant is the only class member seeking to be appointed as lead plaintiff, Movant is necessarily the class member "most capable of adequately representing the interests of class members".

Defendant no doubt will argue that Movant may not be appointed lead plaintiff because the application was not made within the 60-day period prescribed by 15 U.S.C. § 78u-4(a)(3)(A)(i): "any member of the purported class may move the court to serve as lead plaintiff of the purported class" within 60 days after the date on which the statutorily

5

required notice of the action is published.[2] But the statute does not affirmatively prohibit a class member from applying to be lead plaintiff more than 60 days after the notice was published. There is no suggestion in the PSLRA or the legislative history that the lead plaintiff provisions were intended to prevent class actions from proceeding; instead, they were designed to insure that public notice of the filing of the action is disseminated and to allow class members with larger financial interests to control the litigation if they so choose. The lead plaintiff provisions of the PSLRA govern the process by which the court selects a lead plaintiff from among competing applicants. It would be a perversion of the statute to apply the lead plaintiff provisions in a way that prohibits the appointment of any lead plaintiff when there is a class member who is willing and qualified to serve as lead plaintiff. In an untypical case, such as this one, where the only lead plaintiff application filed within the 60 day period was denied, the statutory intent is furthered by permitting a lead plaintiff application beyond the 60 day period.[3]

In summary, where Movant is the only class member who is seeking to be appointed as lead plaintiff (other than class member Swack whose motion was denied), and Movant meets the statutory qualifications, Movant should be appointed lead plaintiff.

---

[2] Swack published a PSLRA notice upon the filing of her complaint. The plaintiffs in this action did not publish a notice in light of the statutory provision that if more than one action is filed asserting substantially the same claim or claims, only the plaintiff in the first filed action should be required to publish a notice. 15 U.S.C. § 78u-4(a)(3)(A)(ii). Plaintiffs are also filing a separate motion for consolidation of this action with the Swack action.

[3] Movant submits that there is nothing prohibiting the action from going forward without appointment of a lead plaintiff if it otherwise meets the requirements of Rule 23, but it would seem to be better practice that a lead plaintiff be appointed..

6

### B. Movant Is the Most Adequate Plaintiff and Should Therefore Be Appointed Lead Plaintiff

The PSLRA specifically sets out a presumption as to who is the most adequate plaintiff, and who therefore should be appointed lead plaintiff. The statute sets forth three factors:

> . . . . the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

Movant is the only class member who meets these requirements, and therefore he should be appointed as lead plaintiff.

#### 1. Movant Filed the Complaint and Made a Motion

Movant filed the complaint in this action and he has made a motion for appointment as lead plaintiff. He therefore satisfies the first requirement to be presumed "the most adequate plaintiff".

#### 2. Movant Has The Largest Financial Interest in the Relief Sought

Movant is the only class member who is seeking to be appointed lead plaintiff. Therefore, by definition, Movant has the largest financial interest of any class member competing for the lead plaintiff appointment, and therefore meets the second requirement in the statute.

7

Movant's transactions are set forth in his certification attached to the complaint. Movant purchased 800 shares of Razorfish stock for an aggregate purchase price of approximately $25,000. The price at the end of the class period was approximately $1.80 per share. Movant's losses, therefore, were approximately $23,500.

### 3.   Movant Otherwise Satisfies The Requirements of Rule 23

The statute provides that the lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23 contains two requirements with respect to the class representative, which must be met by a proposed lead plaintiff:

> . . . . the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
>
> the representative parties will fairly and adequately protect the interests of the class.

The typicality requirement is satisfied when each class member's claim arises from the same events and the claims are based on the same legal theories. *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (citation omitted); *In re Bank of Boston Corp. Sec. Litig.*, 762 F.Supp. 1525, 1532 (D. Mass. 1991). Movant satisfies the typicality requirement because he purchased shares of Razorfish common stock during the Class Period at artificially inflated prices, thereby being damaged in the same way as all class members (who by definition purchased Razorfish shares during the Class Period) by the alleged fraudulent analyst reports on Razorfish issued by defendant. Complaint, ¶¶ 8, 73-74.

Movant also satisfies the adequacy requirement. Judge Harrington set forth the test for adequacy in *Tolan v. Computervision Corp.*, 696 F. Supp. 771 (D. Mass. 1988).

> Adequacy of representation depends on two factors: (1) the plaintiffs' attorneys must be qualified, experienced and generally able to conduct the litigation, and (2) the plaintiff must not have interests antagonistic to that of the class.

*Id.* at 780.[4]

Movant's interest is in obtaining the best recovery for class members. Thus, he has no interests antagonistic to the class. In addition, Movant has retained highly competent and experienced counsel in this action. Shapiro Haber & Urmy LLP and Wolf Popper LLP are well known securities litigation firms that have been adjudged adequate class counsel in numerous class actions and that are capable of prosecuting this litigation. Copies of the firms' resumes are attached to the Shapiro Decl. as Exhibits B and C.

Accordingly, Movant meets the statutory requirements and should be appointed lead plaintiff.

## II. THIS ACTION SHOULD BE CERTIFIED AS A CLASS ACTION WITH MOVANT CERTIFIED AS A CLASS REPRESENTATIVE PURSUANT TO RULE 23

### A. Movant Meets the Requirements to Be Certified as a Class Representative Pursuant to Rule 23

Rule 23(a) sets out the prerequisites to a class action. The requirements that concern the proposed class representative, as noted in Part I B 3 above, are that:

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [the "typicality requirement"], and
>
> (4) the representative parties will fairly and adequately protect the interests of the class [the "adequacy requirement"].

---

[4] Many courts place the burden on defendants to prove the inadequacy of representation. *See Frietsch v. Refco, Inc.*, [1993-94 Transfer Binder], Fed. Sec. L. Rep. (CCH) ¶ 98,315A (N.D. Ill. Jan. 12, 1994); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1988); *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 140 (D.N.J. 1984).

9

Movant's claims are typical of the class claims and he will fairly and adequately protect the interests of the class. See Part I B 3 above. Accordingly, he meets these two requirements for certification as a class representative pursuant to Rule 23.

### B. This Action Meets the Remaining Prerequisites in Rule 23(a) for Certification as a Class Action

In addition to the elements of Rule 23(a) that pertain to the proposed class representative, Rule 23(a) also provides that an action may be maintained as a class action if

> (1) the class is so numerous that joinder of all members is impracticable, [and] (2) there are questions of law or fact common to the class.

Both of these requirements are easily met here.

#### 1. The Class is Numerous

Razorfish Shares were actively traded on the NASDAQ National Market System. Complaint, ¶ 12. The Class Period runs for almost two years, from May 24, 1999 through February 5, 2001. Complaint, ¶ 1. As alleged in the complaint, the members of the class are sufficiently numerous that joinder of all members is impracticable. Complaint, ¶ 12.[5]

#### 2. There are Questions of Law or Fact Common to the Class

As alleged in the complaint, there are numerous common questions, including such questions as whether the federal securities laws were violated, whether defendant participated in the fraudulent course of conduct alleged, whether the market price of Razorfish stock was artificially inflated by defendant's wrongful conduct, and the measure of damages. Complaint, ¶ 15. Indeed, a finding that the class representative's claims are

---

[5] Movant will submit evidence on the numerosity of the class if defendant contests this issue.

typical of the class, i.e., that they arose from the same course of conduct, establishes that there are common questions of law or fact. In a securities case, such as this one, the commonality requirement is met when defendant is alleged to engage in a common course of conduct by making misrepresentations and/or omissions concerning a security. *Opiela v. Bruck*, 139 F.R.D. 257, 259-260 (D. Mass. 1990); *Randle v. SpecTran*, 129 F.R.D. 386, 390 (D. Mass. 1988).

### 3. The Predominance Requirement Under Rule 23(b)(3) is Satisfied

In addition to meeting the prerequisites of Rule 23(a), an action must also satisfy one of three alternative requirements in Rule 23(b) in order to be maintained as a class action. This action meets the requirements of Rule 23(b)(3), in that the common questions of law or fact predominate over any individual questions and a class action is superior to other available methods for adjudicating the controversy. Innumerable securities fraud actions have been certified as class actions based on the predominance and superiority requirements of Rule 23(b)(3).

> . . . . common issues are deemed to predominate when the class shares issues of 'overriding significance,' such as a determination of defendant's liability, so that separate adjudication of individual liability claims would be unnecessary.

*Mulligan v. Choice Mortg. Corp. USA*, No. 96-596-B, 1998 U.S. Dist. LEXIS 13248, at *14 (D.N.H. Aug. 11, 1998) (citation omitted). "While common questions of law or fact must predominate, they need not be exclusive." *Abrams v. Van Kampen Funds, Inc.*, No. 01-C-7538, 2002 U.S. Dist. LEXIS at *11 (citation omitted) (N.D. Ill. Aug. 26, 2002).

"The predominance requirement is often 'readily met' in 'cases alleging . . . securities fraud.'" *Duhaime*, 177 F.R.D. at 64 (citation omitted). The requirement is satisfied in this

11

action because Movant alleges that defendant issued false and misleading analyst reports that affected all members of the class.

The superiority requirement of Rule 23(b)(3) is also satisfied. Securities class actions are routinely certified because courts have recognized that they are far superior to a multiplicity of individual actions for resolving such claims. As recognized in this District, the "class action device is superior to other methods of adjudication in securities fraud cases." *Grace v. Perception Tech. Corp.*, 128 F.R.D. 165, 167 (D. Mass. 1989).

In this case, considerations of judicial economy and access to justice underscore the superiority of class action treatment. To require individual members of the Class to bring multiple actions against defendant would result in an enormous duplication of judicial effort and expense. In addition, the claims of many Class members are not large enough to support separate actions. As the Court noted in *Randle*:

> in light of plaintiffs' allegations concerning the large number of outstanding Spectran shares during the class period, the relatively small financial stake of class members who may have been injured and the likely geographical dispersion of class members, a class action is superior to other methods of adjudicating this controversy.

129 F.R.D. at 393

## IV.    THIS COURT SHOULD APPROVE MOVANT'S CHOICE OF LEAD COUNSEL

The PSLRA provides that "the most adequate plaintiff shall, subject to the approval of the Court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). Movant has selected Shapiro Haber & Urmy LLP and Wolf Popper LLP to represent the Class as Lead Counsel.

These firms have extensive experience in the area of securities class action litigation and, as detailed in their resumes (Shapiro Decl., Exhibits B and C), they have

successfully prosecuted numerous securities class actions on behalf of injured investors. Consequently, this Court may be assured that the members of the Class will receive legal representation of the highest quality.

## CONCLUSION

For all the foregoing reasons, Movant respectfully requests that the Court: (i) appoint Movant to serve as lead plaintiff pursuant to Section 21D of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4; (ii) and/or, in the alternative, certify this action as a class action and Movant as a class representative pursuant to Rule 23(a) and (b)(3); and (iii) approve the Movant's selection of Lead Counsel.

Dated: January 9, 2004                    Respectfully submitted,

*/s/ Thomas G. Shapiro*

Thomas G. Shapiro (BBO# 454680)
Theodore M. Hess-Mahan (BBO #557109)
SHAPIRO HABER & URMY LLP
75 State Street
Boston, MA 02109
(617) 439-3939

Robert Finkel
Wolf Popper LLP
845 Third Avenue
New York, NY 10022
(212) 759-4600

**ATTORNEYS FOR PLAINTIFFS**

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL-HAND-FAX ON 1/9/04