UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRY SWACK, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEHMAN BROTHERS INC.,<br><br>Defendant. | Civil Action No. 03-10907-RCL |
| ROBERT COOPERSMITH and ALLEN ECKERT, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEHMAN BROTHERS INC.,<br><br>Defendant. | Civil Action No. 03-12205-RCL |

**DEFENDANT LEHMAN BROTHERS INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF ROBERT COOPERSMITH'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

At oral argument on March 30, 2004, the Court invited counsel for defendant Lehman Brothers Inc. ("Lehman") to submit a supplemental memorandum addressing the cases and issues discussed during that argument. Accordingly, Lehman respectfully submits this supplemental memorandum of law in support of its opposition to Plaintiff Robert Coopersmith's motion for appointment as lead plaintiff and for appointment of the firms Shapiro Haber & Urmy LLP ("Shapiro Haber") and Wolf Popper ("Wolf Popper") LLP as lead counsel.

## **Preliminary Statement**

During oral argument, the Court asked whether courts have discretion to excuse a plaintiff's failure to comply with the notice provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 786-4 *et seq.*, to waive the PSLRA's deadlines, and to permit a plaintiff – like the plaintiffs here – to reset the clock by issuing untimely notice to the putative class. As we explain below, Lehman does not believe that courts have such discretion. Lehman also believes that extending or waiving the PSLRA's deadlines would be inconsistent with the very purpose behind the PSLRA.

The PSLRA was designed to limit the number of securities class actions. To serve that end, the PSLRA necessarily must prevent some class actions from going forward. Given that purpose, and the fact that class actions addressing the very same issues raised in these now consolidated cases are already proceeding in this Court and in federal court in the Southern District of New York, there is simply no equitable purpose served by altering the Congressional scheme established in the PSLRA. Plaintiffs will still have their day in court, either by proceeding with these claims on an individual basis or by awaiting the outcome of the class actions that already cover their claims. The courthouse door will be closed only to plaintiffs' counsel – but they are part of the group that Congress sought to deter when it passed the PSLRA. Ignoring the PSLRA's notice and filing deadlines will, therefore, benefit the very group that Congress wanted to thwart and send a signal to litigants everywhere that the PSLRA cannot stop the race to the courthouse.

## ARGUMENT

### I. The Policy Underlying The PSLRA Requires Strict Interpretation of the Deadlines

#### A. The PSLRA was Intended to Limit Securities Class Actions and Eliminate Lawyer-Driven Suits

The PSLRA was specifically designed to limit the number of securities class actions and to prevent precisely the type of lawyer-driven litigation presented by these facts. *See, e.g., MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 216 F. Supp. 2d 251, 256 (S.D.N.Y. 2002) ("when Congress enacted the [PSLRA], it sought to raise the bar for bringing class actions under the Securities Act of 1933 and Securities Exchange Act of 1934."); *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 43 (D. Mass. 2001) ("one key aim [of the PSLRA] was 'to empower investors so that they – not their lawyers – exercise primary control over private securities litigation'") (quoting S. Rep. No. 104-67, at 683 (1995)); H.R. Conf. Rep. 104-369, at 332 (1995) ("This legislation implements needed procedural protections to discourage frivolous litigation."); S. Rep. 104-98, at 31 (1995)("the bill would establish various procedures and restrictions to discourage litigation"); S. Rep. No. 104-67, at 685 (PSLRA seeks to "transfer primary control of private securities litigation from lawyers to investors").

#### B. Failure to Comply with the PSLRA's Deadlines Is "Fatal" to the Maintenance of a Securities Class Action

Under the PSLRA, an individual seeking to bring a securities class action and be appointed as lead plaintiff must follow a few simple, but precise, procedural steps. First, she must file a written certification, which sets forth, among other things, certain information about her trades in the securities at issue in the complaint. 15 U.S.C. § 78u-4(a)(2). Second, she must, within twenty days after the date on which the complaint was

filed, "cause to be published, in a widely circulated national business-oriented publication or wire service" notice to the members of the purported class that the action has been filed and that all members have sixty days after the date of that notice to file a motion with the court for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Third, within sixty days after the date on which notice was published, she must move the court for her appointment as lead plaintiff. *Id.* At that point, the PSLRA's procedural obligations are met.

Consistent with the statute's plain language, courts have held that "[t]he PSLRA is unequivocal and allows for no exceptions. All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action. The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint . . . filed after the sixty (60) day window has closed." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) (declining to consider complaint filed after 60-day period by entity seeking lead plaintiff role in consolidated action); *see also In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 439-40 (S.D. Tex. 2002) ("The statute is unequivocal and imposes precise time requirements. Therefore all motions for appointment of lead Plaintiff must be filed within sixty days of the published notice.").

Strict enforcement is even more important here than in the typical case because the requirement that plaintiffs here have failed to satisfy – the notice requirement – is "central" to the act. *Ravens v. Iftikar*, 174 F.R.D. 651, 675 (N.D. Cal. 1997). "[A] putative class member cannot know whether his interests are adequately represented, or whether he will be entitled to recovery at all, without notice of rudimentary information

bearing on plaintiffs' qualifications to represent the class alleged in the pleadings." *Id.* As *Ravens* recognizes, notice is a key part of the PSLRA's effort to "displace figurehead plaintiffs with real investors in securities class actions." *Id.* For this reason, a "failure of the named plaintiff . . . to serve notice to class members [is] *fatal* to maintenance of the putative class action." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 60 (D. Mass. 1996) (emphasis added); *see also Ravens*, 174 F.R.D. at 654 (requirement of notice is "one of constitutional dimension").

As the structure of the PSLRA confirms, Congress knew how to provide courts with discretion when it wanted to grant such discretion. That it chose not to do so with respect to the PSLRA's initial notice and filing deadlines confirms that those deadlines were not intended to be flexible or discretionary. In making the notice and filing deadlines mandatory and non-discretionary, Congress was aware that these strict deadlines would be dispositive of a class action if the only lead plaintiff candidate had filed an untimely notice or motion. In fact, this result in fully consistent with the PSLRA's goal of discouraging frivolous litigation. In short, the facts of this case do not present a scenario that Congress failed to anticipate. Congress knew that parties might miss the notice and filing deadlines and intended for such parties to be foreclosed from serving as lead plaintiff. Courts have recognized this and have had no problem denying appointment of a lead plaintiff that has failed to satisfy the PSLRA, even where there are no other lead plaintiff candidates. *See Skwortz v. Crayfish Co., Ltd.*, 2001 U.S. Dist. LEXIS 15532, at *16-17 (S.D.N.Y. Sept. 28, 2001); *King v. Livent. Inc.*, 36 F. Supp. 2d 187, 191 (S.D.N.Y. 1999).

In contrast to the strict notice and filing deadlines set out in 15 U.S.C. § 78u-4(a)(3)(A)(i), Congress provided courts discretion in selecting the most appropriate lead plaintiff by creating a rebuttable presumption that the most adequate lead plaintiff will be the one who has "the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A court has discretion, however, to reject that plaintiff, even though she has the largest financial interest, if she "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Indeed, courts have concluded that the presumptions and discretion built into 15 U.S.C. § 78u-4(a)(3)(B)(iii) of the PSLRA are triggered only *after* one has fully complied with the strict requirements of 15 U.S.C. § 78u-4(a)(3)(A)(i). *See In re Lernout & Hauspie*, 138 F. Supp. 2d. at 43.

### C. The Strict Deadlines in the PSLRA's Lead Plaintiff Provisions Serve Important Policy Considerations

At oral argument, plaintiffs argued that if a court did not have the flexibility to waive the deadlines or substitute a lead plaintiff beyond the 60-day deadline, more class members would be forced to file motions for appointment as lead plaintiff.[1]

---

[1] The prior actions of plaintiff's counsel belie their current arguments that the deadlines in the lead plaintiff provisions of the PSLRA are meant to be flexible guidelines. First, in Ms. Swack's Motion for Appointment as Lead Plaintiff, the first heading in the "argument" section is "the Movant Makes This Motion Within 60 Days of Publication of Notice." Clearly, plaintiffs would be singing a different tune if this court were considering a lead plaintiff application filed on the 61st day. Second, rather than bring a motion for appointment as lead plaintiff in the *Swack* action, which they knew would not have been timely, plaintiffs' counsel brought an entirely new complaint in an effort to restart the PSLRA clock. Third, and ironically, plaintiffs' counsel submitted the motion at issue on the 60th day *after* the complaint was filed as though there were a deadline, when in fact, plaintiffs have proceeded as if the PSLRA deadlines are inconsequential, and are so arguing to the Court here. Of

6

This, plaintiffs argue, would be "bad policy" because the court would be flooded with such motions. This argument has it exactly wrong.

As plaintiffs explained at argument, once notice is served, class action lawyers begin speaking with one another and reach decisions as to who the likely lead plaintiff will be and, on that basis, the lawyers choose not to submit competing applications. Strict interpretation of the guidelines, plaintiffs assert, would make this process less certain and create an incentive for *more* applicants to step forward following notice *and* during the 60-day window created by the PSLRA.

Congress had in mind precisely the auction-type process that plaintiffs now wish this Court to avoid. *See Ravens*, 174 F.R.D. at 655-56 (citing the Yale Law Journal article that served as a template for the PSLRA's lead plaintiff provisions and observing that the lawyer who initiated the litigation "*has an incentive to discourage, rather than foster, investor competition*") (emphasis added). Thus, once a suit is filed under the PSLRA, notice is sent out, and those with an interest in the litigation are instructed to, in essence, submit their "bids" to become lead plaintiff within 60 days, at which point *all bids are final*. As courts have recognized, if the time to submit bids could be altered or extended, applicants would have the opportunity to see what their competition was bidding and alter their bid to try and gain an advantage. *Telxon*, 67 F.

---

course, since plaintiffs never issued notice when they filed suit and the *Swack* notice made no mention of a December 2, 2003 deadline, no other putative class member stepped forward to compete for the lead plaintiff role. Indeed, plaintiffs counsel, who now argue for what is in effect a waiver of the 60-day deadline, have proceeded every step of the way in this litigation as if the 60-day rule were completely immutable.

7

Supp. 2d at 818.[2] Thus, as plaintiffs' admissions at oral argument confirm, strict application of the statutory deadlines is essential to the proper functioning of the PSLRA's framework – a framework that was designed to put class action lawsuits in the hands of real plaintiffs and not class action lawyers.

## II. Plaintiffs Have Not Triggered the Provisions of the PSLRA in which Congress Granted Courts Discretion

At oral argument, the Court referred to a line of cases that might, the Court believed, be read to support the conclusion that the PSLRA's deadlines can be modified under certain circumstances. We believe the circumstances present in those cases are very different from the facts presented on this motion.

In a number of these cases, the court – having determined that the PSLRA's prerequisites to pursuit of a class action had been met – was simply forced to revisit its selection of lead plaintiff because of an unexpected development, such as a lead plaintiff's decision to withdraw from that role.

---

[2] Plaintiffs have never suggested that they erred in not filing the proper notice. We refer the Court to our initial papers in which we made clear that plaintiffs' counsel filed the *Swack* action with a proposed lead plaintiff with millions of dollars in alleged damages, thereby discouraging other potential lead plaintiffs to step forward. *See* Lehman's Memorandum of Law in Opposition to Coopersmith's Motion For Appointment as Lead Plaintiff ("Memorandum of Law in Opposition") at 8-9. Then, when Ms. Swack was rejected as lead plaintiff, the same lawyers filed a new lawsuit with a proposed lead plaintiff with very minor alleged damages, without providing the requisite notice, thus ensuring once again that no other potential lead plaintiffs would step forward. *Id.* at 9. It is precisely this type of gamesmanship that the notice requirements sought to eliminate. *See, e.g., Telxon*, 67 F.Supp. 2d at 818 (denying motion for appointment as lead plaintiff where plaintiffs tried "to manipulate the size of their financial loss" in order to qualify as plaintiff with largest financial interest in litigation). Congress surely did not intend for courts to relax the PSLRA deadlines for would-be lead plaintiffs (or more likely, plaintiffs' counsel) whose applications have already been rejected to get a second bite at the apple.

For example, in *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427 (E.D. Va. 2000), there were initially *five* motions filed on behalf of those seeking lead plaintiff status. The court selected one plaintiff to serve and that plaintiff, at a certain point beyond the 60-day deadline, moved to withdraw as lead plaintiff. *Id.* at 436. The court granted that motion and solicited additional motions for appointment as lead plaintiff. *Id.* at 430. In the second round of motions, *seven* plaintiffs stepped forward. *Id.* at 438.

Similarly, in *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) there were *thirty-three* complaints filed. The court certified a lead plaintiff, but that previously certified lead plaintiff withdrew after the 60-day period had expired. *Id.* at 120. The court allowed subsequent motions for appointment as new lead plaintiff because the original lead plaintiff had withdrawn after the 60-day deadline, and there were no other plaintiffs who had moved for appointment as lead plaintiff in response to the initial notice of pendency. *Id.* at 120-21 & n.5.

In *Chill v. Green Tree Financial Corp.*, 181 F.R.D. 398, 403-04 (D. Minn. 1998), several complaints had been filed over a period of time with differing class periods, and several notices had been published, with differing 60-day deadlines. In addition, there were multiple groups of potential lead plaintiffs, including one that represented forty-one investors and another that consisted of over 300 investors. *Id.* at 403. The court allowed motions for lead plaintiff to be considered even though they were not filed within 60 days of the original notice published because various complaints had different class periods and different notice and filing deadlines, and it would be unfair to hold a plaintiff who had fit into the larger class period complaint to the notice deadline

9

from the smaller class period complaint. *Id.* at 404 & n.7. Thus, the 60-day filing period for these plaintiffs did not relate back to the original notice publication date. *Id.*

*Skwortz v. Crayfish Co., Ltd.*, 2001 U.S. Dist. LEXIS 15532, at *13-15 (S.D.N.Y. Sept. 28, 2001), presents a slightly different scenario. In *Skwortz*, there were *eleven* different complaints filed, but only one application for lead plaintiff. The single application for lead plaintiff, however, was filed later than 60 days after notice had been published and was thus untimely under the PSLRA. *Id.* at *13. The Court rejected the late application for lead plaintiff, finding that the 60-day requirement of the PSLRA is "mandatory" and "thus, an untimely motion has the effect of preventing the proposed [lead plaintiff] from satisfying the first requirement of the most adequate plaintiff presumption under the PSLRA." *Id.* at *16-17. Significantly, the Court noted that – contrary to plaintiffs' arguments here – the "fact that no other motions for lead plaintiff have been filed does not mean that the [tardy lead plaintiff applicant] is automatically appointed lead plaintiff," but rather, "[w]here there is not a timely motion before the Court, the PSLRA directs this Court's attention to the plaintiffs that have "filed [a] complaint." *Id.* at *17. In the case at hand, unlike *Skwortz*, there are no other complaints from which to choose a lead plaintiff. Only one plaintiff has stepped forward to seek appointment and it is undisputed that the plaintiff here has failed to provide timely notice to the putative class.[3] Accordingly, in contrast to *Skwortz* and the other cases to which

---

[3] As we explained at argument and in our initial papers, the time to move for appointment under the *Swack* notice expired in July. *See* Memorandum of Law in Opposition at 2, 6. And, even were that not the case, the *Swack* notice was defective for purposes of the *Coopersmith* action. *See Raven*, 174 F.R.D. at 657-60. It is undisputed that, other than the plaintiffs here and Swack herself, no other putative class member has received any notice that the Court is currently reviewing an

the Court referred the parties, there is no one left for the court to consider or appoint as lead plaintiff.[4]

For this reason, we believe a comparison of the facts here with the facts present in the cases cited by the Court underscores Lehman's opposition. Through the PSLRA, Congress sought to deter lawyer-driven suits and to ensure that those who were truly interested and motivated to protect the class and pursue litigation had an incentive to step forward and direct the litigation. Here, the record reflects a decided lack of interest in this litigation. So far a total of three plaintiffs, all represented by the same lawyers, have expressed any interest in this action. This is in stark contrast to the numerous complaints and plaintiffs present in the cases discussed above. If the PSLRA does not act to preclude a class action like this, then the statute has failed to operate as Congress intended.

---

application for selection of lead plaintiff and lead counsel in these now consolidated actions.

[4] There are three possible lead plaintiffs who have stepped forward in this action. The first, Ms. Swack, has already been found by this Court to be an inappropriate lead plaintiff. As we have established in this memorandum and in our initial papers, the second, Robert Coopersmith, is not an adequate lead plaintiff because he has failed to satisfy the mandatory notice and filing deadlines of the PSRLA. The only other possible lead plaintiff is Allen Eckert. Mr. Eckert, however, is also not an adequate lead plaintiff because, rather than losing money on his purchase of Razorfish stock, which is the crux of the Complaint here, Mr. Eckert's mandatory certification under the PSLRA demonstrates that the price of the Razorfish stock was actually higher at the end of the alleged Class Period than when Mr. Eckert initially purchased the Razorfish stock. *See* Coopersmith Complaint, filed Nov. 10, 2003, at ¶ 68 (on Feb. 5, 2001, shares of Razorfish closed at $1.81); Eckert Certification of Securities Fraud Class Action Complaint at 1 (on Jan. 4, 2001, Mr. Eckert purchased 1,000 shares of Razorfish stock at $1-19/32 per share).

### III. Denial of Plaintiff's Motion Will Not Prejudice the Rights of the Putative Class

Plaintiffs argue that the cases cited by Lehman in its opposition brief are distinguishable because they involve situations in which there are multiple candidates vying for lead plaintiff status. In this case, plaintiffs argue, because there is only one potential lead plaintiff, denial of their motion will mean that the rights of the putative class members to bring a class action will somehow be prejudiced. This argument is flawed for three reasons. First, if these plaintiffs (or any putative class member) wish to proceed as part of a class action, at least two such actions – including one against Lehman – containing allegations relating to Razorfish research reports are currently pending, one in the Southern District of New York (*In re Razorfish, Inc. Initial Public Offering Sec. Litig.* (Corrected Master Allegations filed August 30, 2002 (21 MC 92 (SAS), at ¶¶ 86-110) and (Consolidated Amended Complaint filed April 19, 2002 (No. 01-Civ.-5427 (SAS) at ¶¶ 56-57), and one in this district (*Swack v. Credit Suisse First Boston, et al.*, C.A. No. 02-CV-11943 (DPW)).[5]

Second, there is absolutely nothing prohibiting any of the proposed class members from attempting to pursue their claims on an individual basis.

Third, there is nothing in the law that grants plaintiffs an inalienable right to bring a class action. The PSLRA and Federal Rule of Civil Procedure 23 permit plaintiffs to bring class actions, but only if they meet certain requirements. If those

---

[5] In fact, Wolf Popper, which acts as co-counsel to Mr. Coopersmith in this matter, is also listed as plaintiffs' counsel in *In re Razorfish* – a lawsuit against Lehman premised on allegations that are substantially similar to those in the complaint in this action. A copy of the Consolidated Amended Complaint and the relevant portions of the Corrected Master Allegations in that action are attached hereto as Exhibits A and B, respectively.

12

requirements are not satisfied, a class action simply cannot go forward. Thus, not only do courts routinely deny class certification, but – as the history here demonstrates – courts are not reluctant to reject a lead plaintiff's application even when that lead plaintiff is the only applicant. *See* Order Denying Motion of Terry Swack for Appointment as Lead Plaintiff, *Swack v. Lehman Brothers Inc.*, C.A. No. 03-CV-10907 (RCL) (D. Mass. Aug. 13, 2003). *See also Skwortz*, 2001 U.S. Dist. LEXIS 15532, at *16-17; *King v. Livent, Inc.*, 36 F. Supp. 2d at 191.

In short, the only party that may be harmed by the termination of this class action is plaintiffs' counsel.

## IV. The Consolidation Determination Required by the PSLRA Does Not Affect the Deadlines under the Lead Plaintiff Provisions

Under the PSLRA, if there is "more than one action on behalf of a class asserting substantially the same claim or claims . . . and any party has sought to consolidate those actions," the Court must first make a determination about consolidation before appointing a lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii). At argument, the Court asked whether this requirement can be read to suggest that the deadlines contained in the lead plaintiff provisions may be flexible. At least one court has dealt with this precise issue and determined that the consolidation determination does *not* at all alter the lead plaintiff deadlines. *In re Salomon Analyst Litig.*, 2003 U.S. Dist. LEXIS 905, at *3 (S.D.N.Y. Jan. 24, 2003) (granting motion to consolidate cases, but noting that "nothing set forth in this Order shall be construed to stay or alter the deadlines set forth in [the lead plaintiff provisions of the PSLRA]").

## CONCLUSION

For the foregoing reasons, and for those set forth in Lehman's initial Memorandum of Law in Opposition and presented during oral argument, Lehman respectfully requests that the Court deny both Mr. Coopersmith's motion for appointment as lead plaintiff and for appointment of Shapiro Haber and Wolf Popper as lead counsel.

Respectfully submitted,

ROPES & GRAY LLP

John D. Donovan, Jr. (BBO#130950)
Michael T. Marcucci (BBO#652186)
One International Place
Boston, MA 02110
Tel: (617) 951-7000

- and -

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Moses Silverman (admitted pro hac vice)
H. Christopher Boehning (admitted pro hac vice)

1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000

*Attorneys for Defendant Lehman Brothers Inc.*

Dated: April 6, 2004

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on 4-6-04