UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT COOPERSMITH, et al.,   )<br>                                                        )<br>              Plaintiffs,                  )<br>      v.                                          )<br>                                                        )<br>LEHMAN BROTHERS, INC.,     )<br>                                                        )<br>              Defendants.               ) | CIVIL ACTION<br>NO. 03-12205-RCL |

**MEMORANDUM OF DECISION AND ORDER ON
MOTION OF PLAINTIFF ROBERT COOPERSMITH
FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR
APPROVAL OF HIS SELECTION OF LEAD COUNSEL**

May 18, 2004

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiffs, Robert Coopersmith ("Coopersmith") and Allen Eckert ("Eckert"), filed this action on behalf of themselves and all others similarly situated alleging that the defendant, Lehman Brothers Inc. ("Lehman"), a securities broker-dealer, violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, as well as Section 20(a) of the Exchange Act by issuing false and misleading analyst reports in connection with recommendations that investors purchase the common stock of Razorfish, Inc. ("Razorfish") during the period from May 24, 1999 through, at least, February 5, 2001 (the "Coopersmith Class Period").

This matter is currently before the court on the "Motion of Plaintiff Robert Coopersmith for Appointment as Lead Plaintiff, and/or for Certification as a Class

Representative Pursuant to Rule 23, and for Approval of His Selection of Lead Counsel" (Docket # 2).[1] No other putative class members have sought to be appointed as lead plaintiff, nor has any other class member opposed Coopersmith's motion. Lehman objects, however, claiming that Coopersmith failed to file the instant motion within the time-limit prescribed by the Private Securities Litigation Reform Act (the "PSLRA"), 15 U.S.C. § 78u-4. For the reasons detailed herein, this court finds that Coopersmith is the most adequate party to serve as lead plaintiff and that his choice of counsel is appropriate. Accordingly, Coopersmith's motion is ALLOWED.

## II.  STATEMENT OF FACTS[2]

On May 14, 2003, Terry Swack ("Swack"), represented by the law firm of Shapiro Haber & Urmy LLP, filed a lawsuit against Lehman in the United States District Court

---

[1] On February 5, 2004, the District Judge allowed Lehman's "Motion to Enlarge Time" (Docket # 5) which delayed the setting of a briefing schedule on the class certification issue until after Lehman responds to the Complaint, which is not due to happen until after 30 days from date either an order appointing lead plaintiff is filed or any amended complaint is served, whichever is later. (See Docket # 5 ¶¶ 2-3; Docket Entry dated 2/5/04). Delaying the decision on class certification until after a lead plaintiff has been selected is consistent with the approach courts generally take in cases of this type. See, e.g., Greebel v. FTP Software, Inc., 939 F. Supp. 57, 60 (D. Mass. 1996) (lead plaintiff motions and class certification motions involve distinct inquiries; Congress implicitly understood that lead plaintiff motions "would be decided prior to consideration of certification issues"). Thus, that portion of the motion presently before the court dealing with class certification is deemed withdrawn.

[2] The following facts are limited to those relevant to the instant motion.

for the District of Massachusetts on behalf of herself and other investors who had purchased the common stock of Razorfish, a company which provided internet related services to businesses. (Swack Compl. (Docket # 1 in 03-10907-RCL)). Swack alleged that Lehman had violated Section 10(b) of the Exchange Act, Rule 10b-5 promulgated thereunder, and Section 20(a) of the Exchange Act during the period May 24, 1999 through, at least, February 9, 2001 (the "Swack Class Period") by issuing false and misleading analyst reports recommending the purchase of Razorfish stock. (Swack Compl. ¶¶ 1-3). Swack certified that she had purchased 90,000 shares of common stock as a result of Lehman's actions. (Swack Certification (attached to Swack Compl.)). That same day, Swack also filed the initial notice required by the PSLRA (discussed infra) to notify other putative class members of the nature and pendency of the lawsuit, as well as their right to file a motion for appointment as lead plaintiff within 60 days. (Lehman Opp. (Docket # 6) Ex. 1).

On July 14, 2003, Swack then filed a motion for "Appointment as Lead Plaintiff and for Approval of Her Selection of Lead Counsel." (Swack Docket # 3). No other lead plaintiff motions were filed. Nonetheless, Swack's motion was denied by the District Judge on August 13, 2003 on the grounds that Swack was not "the most appropriate party to serve as lead plaintiff" since she had not purchased her shares on the open market, but had actually obtained her shares when she sold a company to Razorfish in a private transaction. (Swack Docket Entry dated 8/13/03; Lehman Opp. at 3). Swack filed a

motion for reconsideration of that ruling (Swack Docket # 12), which was denied by the District Judge on September 6, 2003. (Swack Docket Entry dated 9/6/03).

On November 10, 2003, Coopersmith and Eckert[3] filed the instant lawsuit on behalf of themselves and all others similarly situated who had purchased Razorfish common stock during the Coopersmith Class Period. (Coopersmith Compl. ¶ 1). Like Swack, Coopersmith has at all relevant times been represented by Shapiro Haber & Urmy, but in addition, is also represented by Wolf Popper LLP, a law firm based in New York. (Id. at p. 21). The allegations of Lehman's wrongdoing in Coopersmith's Complaint are substantially the same as those alleged in the Swack litigation. (See id. ¶¶ 1-3). Coopersmith purchased 800 shares of Razorfish common stock during the Class Period at a total cost of approximately $25,000. (Coopersmith Certification (attached to Coopersmith Compl.); Coopersmith Mem. at 2).

On January 9, 2004, Coopersmith filed the instant motion seeking to be appointed lead plaintiff and for the court to approve the law firms of Shapiro Haber & Urmy and Wolf Popper as lead counsel. (Coopersmith Docket # 2). That same day, Swack filed a motion to consolidate her case with the instant case. (Swack Docket # 15; Coopersmith

---

[3] Eckert is not seeking to be appointed as lead plaintiff at this time since he believes that Coopersmith is the most adequate plaintiff. (Coopersmith Mem. (Coopersmith Docket # 4) at 2 n.1). However, he is ready and willing to serve as lead plaintiff in the event Coopersmith's motion is denied. (Id.). Lehman challenges his suitability. (Lehman Supp. Mem. (Coopersmith Docket # 11) at 11 n.4). Based on this court's conclusion that Coopersmith shall be appointed lead plaintiff, the propriety of Eckert's appointment will not be addressed herein.

Mem. (Docket # 4) at 6 n.2). No competing lead plaintiff motions have been filed. On February 2, 2004, the District Judge allowed Swack's motion to consolidate. (Swack Docket Entry dated 2/2/04). This court held a hearing on the instant motion on March 30, 2004 and took the matter under advisement, granting the parties additional time to respond to issues raised during the argument. Briefing continued through April 21, 2004.

### III.  DISCUSSION

#### A.  The Appointment of Lead Plaintiff

Congress enacted the PSLRA to remedy perceived abuses in class actions brought under the federal securities laws, in particular "the belief that the plaintiff's bar had seized control of class action suits, bringing frivolous suits on behalf of only nominally interested plaintiffs in the hope of obtaining a quick settlement." Greebel v. FTP Software, Inc., 939 F. Supp. at 58. Accordingly, one of the PSLRA's objectives was "to ensure more effective representation of investors in securities fraud class actions by transferring control of the litigation from the attorneys to the investors." In re USEC Sec. Litig., 168 F. Supp. 2d 560, 564 (D. Md. 2001). "To accomplish this objective, the PSLRA establishes a new mechanism for appointing a lead plaintiff and lead counsel." In re Tyco Int'l, Ltd., Nos. 00-MD-1335-B, 2000 DNH 182, 2000 WL 1513772, at *1 (D.N.H. Aug. 17, 2000). This process first requires that, upon filing a complaint, the plaintiff give:

> (A) Early notice to class members [by:]
>
> (i) In general
>
> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--
>
> (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i) (the "initial notice").  The PSLRA also provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter is filed, only the plaintiff or plaintiffs in the first filed action shall be required to cause notice to be published in accordance with clause (i)."  15 U.S.C. § 78u-4(a)(3)(A)(ii).  Where more than one such action is filed, the 60 days begins to run from the date the initial notice is published in the first suit.  See In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 818 (N.D. Oh. 1999).

The court is then to appoint a "lead plaintiff," or "most adequate plaintiff," that is the "member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members[.]"  15 U.S.C. 78u-4(a)(3)(B)(i).  Before doing so, however, the court must rule on any motions to consolidate.  15 U.S.C. 78u-4(a)(3)(B)(ii) (the court shall not make a lead plaintiff determination "until after the decision on the motion to consolidate is rendered").

In determining the "most adequate plaintiff," the statute provides:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that--
>
> (aa)  has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--"

> (aa)  will not fairly and adequately protect the interests of the class; or
>
> (bb)  is subject to unique defenses that render such plaintiff incapable of adequately representing the class,

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The issue presently before the court is whether Coopersmith's motion for appointment as lead plaintiff may be appropriately considered by the court since the motion was not filed within "60 days after the date on which the notice [was] published" in the Swack litigation advising class members of the pendency of the action.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  The fact scenario presented "is the question (not specifically addressed in the statute) whether a person who files a complaint after the sixty day period expires may nonetheless move to be named lead plaintiff where that complaint is eventually consolidated with the other actions and this new plaintiff unquestionably has

the largest stake in the litigation." In re Microstrategy Inc., Sec. Lit., 110 F. Supp. 2d 427, 433 n.12 (E.D. Va. 2000). For the reasons detailed herein, this court concludes that Coopersmith may appropriately serve as lead plaintiff.[4]

B.   **The Appointment of Coopersmith**

It is clear that Swack's notice, filed on the day she commenced her suit, was timely. A review of the notice leads the court to conclude that it was adequate, and Lehman has not identified any specific problems with the notice.[5] Since Coopersmith's allegations are substantially the same as Swack's, in accordance with 15 U.S.C. § 78u-4(a)(3)(A)(ii), Coopersmith did not have to file a new notice. See King v. Livent,

---

[4] Lehman does not challenge Coopersmith's qualifications apart from the timeliness of his request for appointment as lead plaintiff, nor would it have standing to do so. See Greebel v. FTP Software, Inc., 939 F. Supp. at 61 (a non-class member "may object to the adequacy of certification and notice, insofar as they are procedural prerequisites for consideration of a motion for lead plaintiff ... [but] may not oppose the motion on grounds relating to the moving parties [sic] satisfaction of the criteria enumerated in section 21D(a)(3)(B)(iii)(I)."). To the extent that this court has an independent obligation to evaluate the adequacy of any proposed lead plaintiff, see In re Enron Corp. Sec. Lit., 206 F.R.D. 427, 439 (S.D. Tex. 2002), this court finds that Coopersmith has satisfied the statute's requirements. Thus, he had the largest financial interest in the relief being sought and, for purposes of lead plaintiff designation (as opposed to the pending class certification decision upon which no opinion is expressed), this court finds that his claims and defenses are typical of the class and he will fairly and adequately protect the class' interests. See generally In re Lernout & Hauspie Sec. Lit., 138 F. Supp. 2d 39, 43, 45-46 (D. Mass. 2001).

[5] In its original Opposition (Docket # 6), Lehman did not challenge the adequacy of Swack's initial notice. Then, in its post-hearing Supplemental Memorandum, Lehman, for the first time, alleged in a conclusory manner in a footnote that the notice was defective. (Lehman Supp. Mem. at 10 n.3). However, this cursory reference is inadequate to properly raise the issue: as the First Circuit has "repeatedly held ... arguments raised only in a footnote or in a perfunctory manner are waived." Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 61 n.17 (1st Cir. 1999), and cases cited, aff'd sub nom. Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000); accord Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 35-36 (1st Cir. 1994) (refusing to address argument raised only in a "cursory footnote" and deeming issue waived). Thus, the argument will not be considered by the court.

Inc., 36 F. Supp. 2d 187, 189 (S.D.N.Y. 1999) (plaintiffs in later filed actions are relieved from the notice requirement pursuant to § 3(A)(ii)). Swack's motion for appointment as lead plaintiff was filed within 60 days of her notice, making her motion undeniably timely.

The situation then arose whereby Swack, who had been approved as lead plaintiff in other litigation, was found not to qualify in this litigation. Not surprisingly, the decision denying her motion for appointment as lead plaintiff was made more than 60 days after her notice had been filed. Such timing is inherent in the statutory scheme, since the court would not consider a motion for appointment of lead plaintiff until the initial 60 day period for filing such a motion had expired. It is also not uncommon for class members not to apply for lead plaintiff status where, as here, a party with greater losses has applied. Nevertheless, according to Lehman, since no other party had filed a motion for appointment of lead plaintiff in the Swack litigation within the 60 day period, Swack, and the later consolidated case of Coopersmith, should be left without even the possibility of the appointment of lead plaintiff. This conclusion has been rejected by a number of other courts which have faced similar, albeit not identical, scenarios, and is rejected by this court as well.

The PSLRA does not limit lead plaintiffs to those who have filed motions within 60 days of the publication of the notice. Rather, those presumed most adequate to serve as lead plaintiffs include either those who have filed a complaint or those who made a motion for appointment within the 60 day period. 15 U.S.C. § 78u-4(B)(iii)(I)(aa). The

use of the disjunctive "or" indicates that the filing of a motion within the 60 day period is not mandatory, but rather is one of two procedural options that can be invoked in order to be presumed the most adequate plaintiff. Coopersmith has satisfied this procedural prerequisite by filing a complaint. See also In re Microstrategy Inc. Sec. Lit., 110 F. Supp. 2d at 432 & n.8 (where multiple complaints are filed, statute clearly allows any person who filed one of the complaints to be named lead plaintiff, even though statute refers to the "filing of the (singular) complaint").

Similarly, the fact that the appointment of lead plaintiff is not to be made until after rulings are made on motions to consolidate is further evidence that the requirement of filing a motion for appointment as lead plaintiff within 60 days of the initial notice is not sacrosanct. The later filed cases do not need to republish any notice. It is obvious that the consolidation issue may arise after the initial 60 day period has expired, yet it is equally obvious that the participants in, and facts of, the later filed suits are to be considered by the court in selecting the lead plaintiff. Lehman's contention that absent the filing of a motion within the 60 day period there can be no selection of a lead plaintiff is unworkable and inconsistent with the terms of the PSLRA.

Many other courts have recognized that where the 60 day period has expired, and there is no lead plaintiff for whatever reason, other applicants can and should be properly considered. For example, in Skwortz v. Crayfish Co., Ltd., 2001 WL 1160745 (S.D.N.Y. Sept. 28, 2001), the court was faced with eleven pending lawsuits, but only one motion for appointment of lead plaintiff. Id. at *4. That motion, by a non-plaintiff, was filed

one day beyond the 60 day deadline and thus was untimely. Id. The court refused to consider the motion and instead considered plaintiffs who had filed the underlying actions since "[w]here there is not a timely motion before the Court, the PSLRA directs this Court's attention to the plaintiffs that have 'filed [a] complaint.'" Id. at *5 (internal citation omitted) (second alteration in original). Thus, while the 60 day period for the filing of lead plaintiff motions was "mandatory," it did not preclude consideration of others who had filed complaints, but had not moved for appointment as lead plaintiff within 60 days. Id.

Similarly, in In re Initial Public Offering Sec. Litig., 214 F.R.D. 117 (S.D.N.Y. 2002), the previously appointed lead plaintiff withdrew and the court had to certify a replacement in consolidated cases which initially had been filed one to two years before. Id. at 120. None of the applicants had filed timely motions in response to the initial notice. Id. & n.5. The court held that the proper course was to appoint the "next 'most adequate' plaintiff" and deemed eligible any movant who either had filed a complaint in one of the consolidated actions, filed a motion in response to the initial notice (although none were filed), or filed within 60 days of the former lead plaintiff's withdrawal. Id. at 120 & n.4.

Other courts have also recognized that, under some circumstances, the PSLRA's 60 day requirement can be extended. Thus, in Chill v. Green Tree Fin. Corp., 181 F.R.D. 398 (D. Minn. 1998), 27 cases had been filed which contained common claims against the defendant. Id. at 402. After the first plaintiff filed suit and issued the initial notice

that same day, other cases were filed which alleged different class periods and had initial notices setting longer deadlines for the filing of lead plaintiff motions. Id. at 403-04 & n.7. Three different plaintiff groups moved for appointment as lead plaintiff, and one such group objected to the appointment of another on the grounds that the motion had been filed after the purported 60 day deadline. Id. at 402, 404 n.7. The court refused to apply the 60 day requirement strictly since several different deadlines had been referenced in connection with the various notices and some of the actionable events only happened after the first such notice had been filed, which would have forced several plaintiffs either to race to the courthouse or lose their right to seek the lead plaintiff position. Id. at 404 n.7. Noting that judges "are not referees at prize fights but functionaries of justice," the court refused to apply the 60 day requirement in such a manner as to deprive injured investors of the right to serve as lead plaintiff. Id. (internal citation omitted). Such a conclusion was consistent with the "overriding purpose" of the PSLRA, which "was to replace so-called figurehead or professional plaintiffs, with real investors" which could be accomplished, in part, by slowing down the race to the courthouse. Id. Accord In re Microstrategy, Inc. Sec. Lit., 110 F. Supp. 2d at 433, 439-40 (party may qualify for lead plaintiff by either filing a complaint or moving for appointment within 60 day period; court assumes that statutory deadline could be extended in certain circumstances).

In re Telxon Corp. Sec. Lit., 67 F. Supp. 2d 803 (N.D. Ohio 1999), relied on by Lehman, does not compel a different result. There, the court had three timely filed

motions for appointment of lead plaintiff, and would not allow a party to base the amount of its loss on a figure contained in an amended complaint filed after the 60 day deadline. Id. at 818.  In so ruling, the court stated that the "PSLRA is unequivocal and allows for no exceptions.  All motions for lead plaintiff must be filed within sixty (60) days of the published notice for the first-filed action."  Id.  Nevertheless, despite this unequivocal language, the court noted that if the largest loss suffered among the potential lead plaintiffs was only "nominal," the court may have been forced to "reopen applications for lead plaintiff to others" even though the deadline had passed.  Id. at 823-24 & n.37. Thus, the Telxon court recognized that circumstances might necessitate adjustments to the PSLRA's schedule.

In sum, this court concludes that under the circumstances of this case Coopersmith, who filed a complaint, is not precluded by the terms of the PSLRA from being considered as lead plaintiff in these consolidated actions by virtue of his failing to file his motion within 60 days of Swack's publication of her initial notice.  Moreover, the failure to appoint lead plaintiff when the original movant was disqualified after the 60 day period would not be consistent with the purposes of the Act, which is to place "real investors" in charge of securities litigation.  Chill v. Green Tree Fin. Corp., 181 F.R.D. at 404 n.7.  The PSLRA does not require speed over due consideration of appropriate candidates.

This court did consider requiring additional publication of notice prior to appointing Coopersmith, but has concluded that because no one else filed a complaint or moved for appointment after Swack was disqualified, no further publication is necessary.

Although the other putative class members may not have specifically received notice of the instant motion, they have had the opportunity to make an informed decision as to whether to apply for the lead plaintiff position. It is undisputed that Swack, who had "purchased" 90,000 shares, issued a proper initial notice which informed the other potential class members of the 60 day deadline and afforded them time to evaluate whether they wished to apply in light of her application. However, no one filed a competing motion or challenged her appointment. Presumably though, any interested putative class members followed the course of Swack's application and thus knew when it had been denied, as well as when the matter had been consolidated with the instant case. Therefore, even if other class members who did not contest Swack's application wanted to challenge Coopersmith's motion, they have been given sufficient notice to do so. As the court held in In re Public Offering Sec. Lit., in language applicable here:

> A colorable argument can be made that, when the initial lead plaintiff withdrew, a new notice should have been filed and the entire lead plaintiff process re-opened. However, where a new lead plaintiff is willing to step forward, there is no need to start the process anew when all putative class members were given notice of the opportunity to move for appointment as lead plaintiff by means of the statutorily required published notice.... If other plaintiffs had filed a lawsuit or originally moved to be appointed lead plaintiff – *i.e.*, moved for appointment as lead plaintiff in response to the initial notice of pendency – then those plaintiffs would arguably be entitled to priority over any other potential lead plaintiffs. But that is not the case here.

214 F.R.D. at 120 n.5. In the instant case, Congress' intent "to ensure that the lead plaintiff is appointed at the earliest possible time, and to expedite the lead plaintiff

process" will be effectuated by appointing Coopersmith as lead plaintiff at this time. In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d at 818-19.

### C. The Appointment of Lead Counsel

The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Giving the Lead Plaintiff primary control for the selection of counsel was a critical part of Congress' effort to transfer control of securities class actions from lawyers to investors." Skwortz v. Crayfish Co., Ltd., 2001 WL 1160745, at *7 (internal citation and quotation omitted).

Here, Coopersmith seeks to appoint the law firms of Shapiro Haber & Urmy LLP and Wolf Popper LLP. No other putative class members have opposed this selection and the only opposition Lehman raises is that since Coopersmith cannot qualify as lead plaintiff, he is not entitled to select lead counsel. In determining whether to approve Coopersmith's choice, the court must "consider whether that choice is well-calculated to protect the interests of the purported plaintiff class." In re Tyco Int'l, Ltd., 2000 WL 1513772, at *8. This court concludes that it is. After having "reviewed the resumes of the nominated firms, and of the involved attorneys" (Shapiro Decl. (Docket # 3) Exs. B, C), the court "find[s] them to be highly qualified both generally, and in the specific context of private class actions under the Federal securities laws." Chill v. Green Tree Fin, Corp., 181 F.R.D. at 413. It is clear that these firms have extensive experience in

cases such as this and are well situated to pursue this action on behalf of the class. For these reasons, this court approves Coopersmith's selection of lead counsel.

## IV.  **CONCLUSION**

For the reasons detailed herein, the "Motion of Plaintiff Robert Coopersmith for Appointment as Lead Plaintiff, and/or for Certification as a Class Representative Pursuant to Rule 23, and for Approval of His Selection of Lead Counsel" (Docket # 2) is ALLOWED.

          / s / Judith Gail Dein
          Judith Gail Dein
          United States Magistrate Judge